BROOKS R. BROWN (SBN 250724)
*bbrown@goodwinlaw.com*
**GOODWIN PROCTER LLP**
901 New York Avenue NW
Washington, DC  20001
Tel.: +1 202 346 4000
Fax.: +1 202 346 4444

LAURA A. STOLL (SBN 255023)
*lstoll@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, 41st Floor
Los Angeles, CA  90017
Tel.: +1 213 426 2500
Fax.: +1 213 623 1673

Attorneys for Defendant:
MUSICAL.LY, INC.

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| PATRICK ROBERTS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MUSICAL.LY, INC.<br><br>Defendant. | Case No. 2:19-cv-00098-KJM-CKD<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT MUSICAL.LY, INC. TO DISMISS THE COMPLAINT AND STRIKE THE CLASS-RELATED ALLEGATIONS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      April 19, 2019<br>Time:      10:00 a.m.<br>Courtroom:  3 (15th Floor)<br>Judge:      Hon. Kimberly J. Mueller |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on April 19, 2019 at 10:00 a.m., or as soon thereafter as this matter may be heard in Courtroom 3 of the above-referenced Court, located at the United States Courthouse, 501 I Street, Sacramento, California 95814, defendant MUSICAL.LY, INC. will, and hereby does, move to dismiss the Complaint of plaintiff PATRICK ROBERTS (*see* Fed. R. Civ. P. 12(b)(6)) and strike the class-related allegations (*see* Fed. R. Civ. P. 12(f) and 23(d)(1)(D)).

Pursuant to this Court's Standing Order, counsel for Plaintiff and Defendant met and conferred telephonically on February 13, 2019, but were not able to reach an agreement resolving the issues that are the subject of this Motion.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file, and upon such oral argument as may be made at the hearing on this Motion.

Respectfully submitted,

Dated:   February 27, 2019            By:   */s/ Laura A. Stoll*
BROOKS R. BROWN
*bbrown@goodwinlaw.com*
LAURA A. STOLL
*lstoll@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Attorneys for Defendant:
MUSICAL.LY, INC

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

COMPLAINT ALLEGATIONS ...........................................................................................3

ARGUMENT..........................................................................................................................4

I. THE APPLIED LEGAL STANDARDS ..................................................................4

II. PLAINTIFF FAILS TO STATE A COGNIZABLE TCPA CLAIM.......................5

    A. Plaintiff Does Not Plausibly Allege That Musical.ly Used an ATDS. ..........5

    B. Musical.ly Did Not "Make" The Challenged Text Messages.......................8

    C. Plaintiff Does Not Allege That He is The User/Subscriber Of the Unidentified Cell Phone Number. ................................................................10

III. THIS IS NOT A CLASS ACTION. .........................................................................11

CONCLUSION.......................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ACA Int'l v. Fed. Commc'ns Comm'n*,
  885 F.3d 687 (D.C. Cir. 2018) .............................................................................................. 2, 10

*Arrington v. Walgreen Co.*,
  2010 WL 11507708 (M.D. Fla. May 24, 2010) ............................................................................ 3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................... 4

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................... 4, 10

*Biggins v. Wells Fargo & Co.*,
  266 F.R.D. 399 (N.D. Cal. 2009) ................................................................................................. 4

*Cour v. Life360, Inc.*,
  2016 WL 4039279 (N.D. Cal. Jul. 28, 2016) ........................................................................... 9, 10

*Crunch San Diego, LLC v. Marks*,
  No. 18-995 (U.S. Jan. 30, 2019) .................................................................................................. 5

*Derby v. AOL, Inc.*,
  2015 WL 3477658 (N.D. Cal. June 1, 2015) ............................................................................ 7, 8

*Derby v. AOL, Inc.*,
  2015 WL 5316403 (N.D. Cal. Sept. 11, 2015) ..................................................................... 2, 8, 9

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ....................................................................................................... 4

*Freidman v. Massage Envy Franchising, LCC*,
  2013 WL 3026641 (S.D. Cal. June 13, 2013) .............................................................................. 6

*In re Gilead Scis. Secs. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................................................... 4, 10

*Hensarling v. Wells Fargo Bank, N.A.*,
  2016 WL 775950 (E.D. Cal. Feb. 29, 2016) ................................................................................ 6

*Huricks v. Shopkick, Inc.*,
  2015 WL 5013299 (N.D. Cal. Aug. 24, 2015) ............................................................................. 9

*Ibey v. Taco Bell Corp.*,
 2012 WL 2401972 (S.D. Cal. June 18, 2012) ............................................................... 1, 2

*Knapper v. Cox Commc'ns, Inc.*,
 2019 WL 250430 (D. Ariz. Jan. 17, 2019) ..................................................................... 10

*Marks v. Crunch San Diego, LLC*,
 904 F.3d 1041 (9th Cir. 2018) ................................................................................ 5, 6, 7

*McKenna v. WhisperText*,
 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ............................................................. 2, 9

*Osorio v. State Farm Bank, F.S.B.*,
 746 F.3d 1242 (11th Cir. 2014) ..................................................................................... 10

*Pepka v. Kohl's Dep't Stores, Inc.*,
 2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ......................................................... 11, 12

*Sanders v. Apple Inc.*,
 672 F. Supp. 2d 978 (N.D. Cal. 2009) ........................................................................... 11

*Tietsworth v. Sears*,
 720 F. Supp. 2d 1123 (N.D. Cal. 2010) .............................................................. 4, 11, 12

*Vinole v. Countrywide Home Loans, Inc.*,
 571 F.3d 935 (9th Cir. 2009) ........................................................................................... 4

**Federal Statutes**

47 U.S.C. § 227(a)-(b) .................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 8 ....................................................................................................... 8, 14

Fed. R. Civ. P. 12 ................................................................................................... *passim*

Fed. R. Civ. P. 23 ................................................................................................... *passim*

*Rules & Regulations Implementing the TCPA*, 30 F.C.C.R. 7961 (2015) .............. 2, 8, 9, 10

*Rules & Regulations Implementing the TCPA*, 18 F.C.C. R. 14014 (2003) ......................... 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Patrick Roberts ("Plaintiff") allegedly received three "verification code" text messages for Defendant Musical.ly, Inc.'s ("Musical.ly") popular mobile phone application ("app") known as TikTok on December 25, 2018. Based on *nothing more than this*, Plaintiff speculates that, because he purportedly did not consent to the text messages, then it must be the case that Musical.ly sent the texts using an "automatic telephone dialing system" ("ATDS") in violation of the cellphone provision of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. But this speculative theory ignores the commonsense reality that verification codes are generated and sent *at the request of consumers* in order to activate various accounts and apps. The only plausible explanation—assuming Plaintiff did not request the verification code himself—is that another TikTok user inadvertently entered Plaintiff's telephone number instead of his or her own and, in so doing, caused the challenged texts to be sent to Plaintiff. Notwithstanding this, Plaintiff seeks to profit for himself by bringing a nationwide putative class action alleging that every text message purportedly sent by Musical.ly over the last four years violated the TCPA. This effort fails out of the gate, however, because what little he pleads in the Complaint demonstrates that Plaintiff has not (and cannot) state a cognizable TCPA claim as a matter of law.

First, Plaintiff pleads no factual allegations that Musical.ly sent the alleged texts using "equipment" meeting the statutory definition of an ATDS, which requires that the number texted be dialed from equipment with the capacity to "store or produce telephone numbers to be called, using a random or sequential number generator." 47 U.S.C. § 227 (a)(1)(A)-(B). This is fatal because the use of an ATDS is a necessary element of Plaintiff's cellphone provision claim. *See Ibey v. Taco Bell Corp.*, 2012 WL 2401972, at *3 (S.D. Cal. June 18, 2012). Nor could Plaintiff plausibly plead factual ATDS allegations because, as anyone who owns and uses a smartphone well knows, verification codes are not pre-programmed content that goes out to bunches of random numbers or a list of numbers. They are instead messages that are individually generated

by and sent in direct response to user input—*i.e.*, the manual entry of a phone number as part of the registration for the use of an app.

For this same reason, Plaintiff has not (and cannot) plausibly allege that Musical.ly "made" the text messages at issue. The fact that the text messages are *verification codes* shows that they were generated by and in direct response to user prompts. Under such circumstances, courts do not hesitate to dismiss TCPA cellphone provision claims like Plaintiff's here. *See*, *e.g.*, *Derby v. AOL, Inc.*, 2015 WL 5316403, at *3-4 (N.D. Cal. Sept. 11, 2015) (dismissing TCPA claim because "sending [text] messages to the wrong recipient" is "triggered by some form of human action" and therefore does not satisfy the ATDS element); *McKenna v. WhisperText*, 2015 WL 5264750, at *3 (N.D. Cal. Sept. 9, 2015) (no ATDS where the "[a]pp user is necessary to set processes in motion" to send the text, even if those processes are otherwise automated); *Ibey*, 2012 WL 2401972, at *3 (dismissing complaint where the challenged text "did not appear to be random but in direct response to Plaintiff's message"). This Court should do the same.

Second, the Complaint fails to state a claim because Plaintiff does not plead that he is either the *subscriber* of the cellular telephone number to which a challenged text was made (*i.e.*, the person who pays for the account) or the *authorized user* of the cellular number. *See*, *e.g.*, *Rules & Regulations Implementing the TCPA*, 30 F.C.C.R. 7961, at 8000-01 (2015), *set aside in part on other grounds by ACA Int'l v. Fed. Commc'ns Comm'n*, 885 F.3d 687, 708-09 (D.C. Cir. 2018). This is fatal because Plaintiff's status as the subscriber or user of the cellphone number to which the challenged texts were sent is an element of his claim.

Finally, even if Plaintiff had adequately pled a TCPA cellphone provision claim (and he has not), the Court should nevertheless strike the class allegations. There is no possibility of class-wide litigation here, because a huge majority (if not one hundred percent) of the putative class members have no claim because they created and consented to receive verification code texts when they entered their phone number while signing up for the TikTok app. Either way, issues of consent foreclose any possibility of class treatment as they would dominate the litigation and predominate over any supposed common questions. Thus, the Court should, at minimum, strike the class allegations as it is empowered to do by Rules 12(f) and 23(d)(1)(D).

# COMPLAINT ALLEGATIONS[1]

The factual allegations supporting Plaintiff's TCPA claim are found in just a handful of paragraphs. Plaintiff alleges that, despite never having had any contact with Musical.ly (Compl. ¶ 11), he received three text messages from Musical.ly in December of 2018 with verification codes. *Id.* ¶ 12. Each of the three messages stated "TikTok" and provided a four-digit number identified as a "verification code." *Id.* Plaintiff separately lists a half dozen purported "consumer complaints" regarding "unsolicited text messages" (*id.* ¶ 16), but he does not allege any facts showing the source of the purported complaints, who made them, the context in which they were made, the dates, or whether they even pertain to Musical.ly or the TikTok app at all.

Based only on these allegations, Plaintiff jumps to two speculative and factually unsupported conclusions, namely that "Defendant was texting consumers *from a list* of telephone numbers and *without human intervention*." *Id.* ¶ 13 (emphasis added). He alleges that these extraordinary and implausible inferences follow solely from the "impersonal nature of the[] text messages and the number of complaints from consumers. . . ." *Id.*

Plaintiff seeks to represent a class consisting of anyone who received a text message from Musical.ly in the last four years (*id.* ¶ 19), without any mention of the individualized issues of consent that foreclose the possibility of class action litigation in the context of a "verification code" text messaging case. Plaintiff then makes boilerplate allegations that the elements of Rule 23 are satisfied, none of which are plausible or factually supported. *Id.* ¶¶ 21-34.

Against this background, Plaintiff purports to assert two causes of action, which appear to be substantively and functionally identical except for the remedy sought. *Id*. ¶¶ 35-44. The First Cause of Action seeks treble damages if the violations are shown to be willful or knowing, whereas the Second Cause of Action does not. *Id.*[2]

---

[1] Musical.ly assumes the truth of Plaintiff's factual allegations for purposes of its Rule 12(b)(6) motion to dismiss only, and reserves all rights to challenge the veracity of any allegation.

[2] There is no standalone claim for treble damages for knowing or willful violation of the TCPA. Treble damages are a remedy, not a cause of action, and so the First Cause of Action should be dismissed for this independent reason. 47 U.S.C. § 227(b)(3); *see also, e.g.*, *Arrington v. Walgreen Co.*, 2010 WL 11507708, at *1 (M.D. Fla. May 24, 2010) ("punitive damages is a remedy, not a cause of action"). Regardless, even assuming *arguendo* that "treble damages" could be a separate cause of action, the Complaint is devoid of any factual allegations of any knowing or

# ARGUMENT

## I. THE APPLIED LEGAL STANDARDS

**Motion to Dismiss**.  To survive a Rule 12(b)(6) motion to dismiss, a complaint must meet Rule 8(a)'s pleading requirements and allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).  Rather, the allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).  When deciding a motion to dismiss, the Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

**Motion to Strike.**  "Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f)," courts have "authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010).  The decision whether to strike allegations is a matter within the court's discretion. *Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 406 (N.D. Cal. 2009); *see also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("District courts have broad discretion to control the class certification process, and whether or not discovery will be permitted . . . lies within the sound discretion of the trial court." (citations and quotations omitted)).

---

willful violation by Musical.ly.  However, should the Court disagree or interpret the claims differently, then Musical.ly requests that Plaintiff be required to provide a more definite statement clarifying any substantive difference between the two claims.  *See* Fed. R. Civ. P. 12(e).

4

## II. PLAINTIFF FAILS TO STATE A COGNIZABLE TCPA CLAIM

Plaintiff fails to allege facts sufficient to state a TCPA cellphone provision claim against Musical.ly. The cellphone provision makes it unlawful "to make any call . . . using any [ATDS] . . . to any telephone number assigned to a . . . cellular phone service" without the prior consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). A text message is considered a "call" under the TCPA. *Rules & Regulations Implementing the TCPA*, 18 F.C.C.R. 14014, at 14115 (2003). Thus, to allege a cognizable cellphone provision claim, Plaintiff must plead factual allegations, among others, that the challenged texts were (i) made by the defendant (ii) using an ATDS or prerecorded or artificial voice, (iii) to a cellular phone number, (iv) of which plaintiff was the authorized user or subscriber at the time of challenged call(s), and (v) without his or her consent. 47 U.S.C. § 227(b)(1)(A). Plaintiff's attempt to state a TCPA cellphone provision claim is defectively pled in a number of respects.

### A. PLAINTIFF DOES NOT PLAUSIBLY ALLEGE THAT MUSICAL.LY USED AN ATDS.

At the outset, Plaintiff fails to plead factual allegations of an essential element of the claim, namely that the challenged texts were sent using an ATDS. The TCPA defines an ATDS as a device with "the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator" and "to dial such numbers." 47 U.S.C. § 227(a)(1). In *Marks v. Crunch San Diego, LLC*, the Ninth Circuit concluded that a device may qualify as an ATDS in one of two ways—either because it has the capacity to automatically dial numbers (i) using "a random or sequential number generator" or (ii) from a "stored list." 904 F.3d 1041, 1047 (9th Cir. 2018).[3]

Here, Plaintiff fails to allege the use of an ATDS under either the statutory definition or the *Marks* definition. Plaintiff makes no allegation that the text messages were sent "using a random or sequential number generator." Instead, Plaintiff's sole allegation relevant to the ATDS element is paragraph 13, which says: "[t]he impersonal nature of these text messages and the number of complaints from consumers . . . indicate that Defendant was texting consumers from a list of

---

[3] Musical.ly's position is that—although Plaintiff's claim fails under both *Marks* and the statutory definition—*Marks* was wrongly decided and conflicts with ATDS decisions from the Second, Third and D.C. Circuits. In any event, a certiorari petition for Supreme Court review of *Marks* is pending resolution. *See Crunch San Diego, LLC v. Marks*, No. 18-995 (U.S. Jan. 30, 2019).

5

telephone numbers and without human intervention." This conclusory—and implausible—allegation is insufficient to plead the ATDS element for many reasons.

First, paragraph 13 does not allege the texts were sent from a "stored" list, but only "from a list[.]" In light of both *Marks* and the relevant statutory language (*see* 47 U.S.C. § 227(a)(1) ("…capacity . . . to store…")), this omission is fatal.

Second, Plaintiff's conclusion that the texts were sent "from a list" (Compl. ¶ 13) is implausible under the facts alleged in the Complaint. The purportedly "impersonal nature of the text messages"[4] (*id.*) suggests absolutely nothing about whether they were sent to numbers on a "stored list." *See Marks*, 904 F.3d at 1047. To the contrary, the reasonable and plausible inference to be drawn from the fact that the texts contained "verification codes" is that they were sent to a number provided directly by the user or consumer when signing up for the app. Nor do the purported "complaints from consumers" (Compl. ¶ 13)—which are of unknown origin and do not even reference Musical.ly—support any conclusion that the texts were sent to numbers on a "stored list." *See Marks*, 904 F.3d at 1047. As such, Plaintiff's claim fails because he does not "allege *facts* that allow this court to draw a *reasonable inference* regarding defendant's use of an ATDS" to send the challenged texts. *Hensarling v. Wells Fargo Bank, N.A.*, 2016 WL 775950, at *4 (E.D. Cal. Feb. 29, 2016) (emphasis added) (granting motion to dismiss where complaint lacked plausible allegations of an ATDS); *see also Freidman v. Massage Envy Franchising, LCC*, 2013 WL 3026641, at *2 (S.D. Cal. June 13, 2013) (that text messages are "generic and impersonal . . . is not enough to make the [ATDS] claims plausible").

Third, *even if* Plaintiff had some additional facts to allege, the discussion in *Marks* regarding a "stored list" demonstrates why Plaintiff's pleading failure on the ATDS element cannot be cured by amendment. In *Marks*, Crunch, a fitness center in San Diego, "captured and stored" the cell phone numbers of its members in a program called the "Textmunication system" that could then deliver text messages to numbers from that stored list at a later date and time in an

---

[4] Although not relevant to the disposition of this Motion, Musical.ly disagrees with Plaintiff's characterization of the text messages as "impersonal." A user-specific verification code is personal to the intended recipient (*i.e.*, the user who entered the phone number for the specific purpose of generating and receiving the verification code).

6
MOTION TO DISMISS AND STRIKE                                  Case No. 2:19-CV-00098-KJM-CKD

automated fashion, when programmed to do so. *Marks*, 904 F.3d at 1048. The Court explained the process as follows:

> When Crunch wants to send a text message to its current or prospective customers, a Crunch employee logs into the Textmunication system, selects the recipient phone numbers, generates the content of the message, and selects the date and time for the message to be sent. The Textmunication system will then automatically send the text messages to the selected phone numbers at the appointed time.

*Id.* Unlike in *Marks*—which involved promotional text messages—the text messages here contain *personal verification codes* for the TikTok app. Plaintiff asks this Court to make the unwarranted inference from the screenshot in Paragraph 12 that the message "[TikTok] 3756 is your verification code" was programmed in advance by Musical.ly to be sent at 6:31 PM on December 25, 2018 to a bunch of cell phone numbers on some theoretical "stored list." Not only is Plaintiff's fanciful leap unsupported by the few facts alleged, it ignores the inherent nature of *verification code* texts, which are generated for an app user in order to complete the process of signing up for the app by verifying the user's identity based on information input by the user. There is no conceivable purpose to sending unwanted verification codes without any context or explanation to a random list of phone numbers unconnected from the TikTok app.[5] Indeed, as anyone who has ever downloaded an app to their smartphone knows, apps will often prompt new users to enter their phone number and then usually within seconds send a verification code to the phone number provided. These verification code texts are not sent to numbers on a "stored list" (much less a stored list of numbers for non-users of the app), but are generated as a result of the user input and sent to the *specific number provided by the user*. Thus, the very nature of the text messages at issue—verification codes for the TikTok app—show why the ATDS element cannot be plausibly alleged.

Courts have not hesitated to dismiss TCPA claims in substantially similar cases where, as here, the context of the alleged text demonstrates that it was not sent using an ATDS. In *Derby v.*

---

[5] This is illustrated by Plaintiff's own response to the verification code text asking "Code for what?" Compl. ¶ 12. There would be no purpose to sending verification codes, which are part of a step in the process of signing up for an app, to a non-user of the app who would have no idea what the code was for or why they were receiving it.

7

MOTION TO DISMISS AND STRIKE                                        Case No. 2:19-CV-00098-KJM-CKD

*AOL, Inc.*, the plaintiff sought class-wide relief under the TCPA against AOL after he received three unsolicited text messages initiated by a user of the AOL Instant Messenger ("AIM"). 2015 WL 3477658 (N.D. Cal. June 1, 2015). In granting the defendant's motion to dismiss, the court noted that "[a]lthough the complaint [did] not so allege, presumably the three texts were the result of the sender inputting an incorrect phone number, which happened to be plaintiff's." *Id.* at *1. The court concluded that plausible ATDS allegations were lacking because "the recipient's number does not come from a list, but rather is provided by the AIM user who directs AOL to send the text in the first place." *Id.* at *4; *see also Derby,* 2015 WL 5316403, at *3-4 (with prejudice dismissal of amended complaint). The same is true here, where the only inference to be drawn from the allegations in the Complaint is that Plaintiff received the verification code text messages when his phone number was input by a TikTok user when signing up for the app.

### B. MUSICAL.LY DID NOT "MAKE" THE CHALLENGED TEXT MESSAGES.

Plaintiff's TCPA claim next fails for the independent reason that Mucial.ly was not the "maker" of the challenged text messages. Only the party that "make[s]" a challenged call using an ATDS without consent can be liable under the TCPA. 47 USC § 227(b)(1)(A). In the context of text messages, the TCPA does not define what it means to "make" a text message. But the FCC—the federal agency charged with implementing and enforcing the TCPA—has provided regulatory guidance on the issue. That guidance provides that an app provider, like Mucial.ly, is not the maker of a text when, as here, it is the app user that takes affirmative steps to cause a text message to be sent. *Rules & Regulations*, 30 F.C.C.R. at 7984 ("These affirmative choices by the app user lead us to conclude that the app user and not TextMe is the maker of the invitational text message.").

In issuing its guidance, the FCC considered factual circumstances where an app's user decided to invite friends to join the app and then caused the app to send an invitational text message on behalf of the user to the persons she selected. *Id.*[6] Consistent with this FCC

---

[6] In the event this action is not dismissed, Musical.ly will demonstrate—as with any request for a verification code—the manual steps a TikTok user must take in order to send a verification code text, including manually entering the app user's phone number during the process of downloading and signing up to use the app.

8

1  guidance, other district courts in the Ninth Circuit have dismissed TCPA claims like Plaintiff's
2  where the circumstances demonstrate that the challenged text was sent as a result of affirmative
3  acts by a third-party, and not the defendant.  *See*, *e.g.*, *McKenna*, 2015 WL 5264750, at *5
4  ("[E]ven though WhisperText uses automated processes to harvest and upload a user's selected
5  phone numbers and then send invitational messages, that is insufficient to make WhisperText the
6  maker or initiator of a call using an ATDS under the TCPA."); *Huricks v. Shopkick, Inc.*, 2015
7  WL 5013299, at *3 (N.D. Cal. Aug. 24, 2015) (finding that the app provider was not the maker of
8  the invitational text message when the app user had to click a button to invite friends and choose
9  which friends to invite).
10         The decision in *Cour v. Life360, Inc.* is illustrative.  2016 WL 4039279, at *4 (N.D. Cal.
11  Jul. 28, 2016).  There, the court concluded that a third-party—not the defendant—was the "maker"
12  of the challenged text such that there was no cognizable TCPA claim against the defendant, and
13  granted the defendant's motion to dismiss.  *Id.*; *accord Rules & Regulations*, 30 F.C.C.R. at 7984
14  (same).  In *Cour*, the plaintiff alleged that, after an app user would download the Life360
15  application and create an account, the application would ask the user if they wanted to invite other
16  contacts or friends to use Life360.  *Id.* at *1.  After the user clicked that they wanted to invite their
17  contacts to the app, the app would send a text message on the user's behalf to the user's invitees.
18  *Id.*  Based on these allegations, the court concluded that the application's user—not the
19  defendant—was the "maker" of the text message.  *Id.* at *4.  This Court should reach the same
20  conclusion here.[7]
21         Plaintiff alleges that he had no prior contact with Musical.ly before receiving the three text
22  messages, which he admits contained verification codes for the TikTok app.  Compl. ¶¶ 11-12.
23  Taking this as true, the *only* reasonable inference is that the verification code text messages were
24  sent on behalf of the third-party TikTok user who entered the phone number in question (probably
25
26  [7] Although *Derby v. AOL, Inc.*, discussed above, did not address the issue of the "maker" of the text, the Court's reasoning further supports the conclusion that the app user, not Musical.ly, is the
27  maker of the text.  Here, as in *Derby*, the context of the text message made clear that "[a]lthough the complaint [did] not so allege, presumably the three texts were the result of the sender inputting
28  an incorrect phone number, which happened to be plaintiff's."  2015 WL 5316403, at *1.

by mistake), in which case this third party was the "maker" of the text messages allegedly received by Plaintiff.  *See Cour*, 2016 WL 4039279, at *4.  In this context, Plaintiff's conclusory allegation that "Musical.ly texted Plaintiff" (Compl. ¶ 12) is insufficient.  *See In re Gilead*, 536 F.3d at 1055 ("conclusory, unwarranted deductions of fact" are insufficient to defeat a motion to dismiss).  Put simply, Plaintiff asks the Court to reach this conclusion based on no factual allegations and completely divorced from the reality of how and why verification texts are sent.  The law requires that this Court decline this invitation, because Rule 8 requires a plaintiff to plead plausible factual allegations to state a cognizable claim and proceed beyond the pleadings stage.  *Twombly*, 550 U.S. at 570.

### C. PLAINTIFF DOES NOT ALLEGE THAT HE IS THE USER/SUBSCRIBER OF THE UNIDENTIFIED CELL PHONE NUMBER.

Plaintiff also fails to state a cellphone provision claim because he does not allege that he was the user or subscriber of the unidentified cellphone at the time of the challenged calls.  The TCPA's cellphone provision makes it unlawful under certain circumstances to make telephone calls using an ATDS to a cellular telephone without the consent of the "called party."  47 U.S.C. § 227(b)(1)(A)(iii).  As the FCC has clarified, the called party is either the *subscriber* of the cellular telephone number to which a challenged call was made (*i.e.*, the person who pays for the account) or the *authorized user* of the cellular number.  *See*, *e.g.*, *Rules & Regulations*, 30 F.C.C.R. at 8000-01; *Knapper v. Cox Commc'ns, Inc.*, 2019 WL 250430, at *3 (D. Ariz. Jan. 17, 2019) ("*ACA International* held that the FCC's interpretation of 'called party' was a permissible one and, thus, did not overrule it. . . ."); *see also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1250-51 (11th Cir. 2014) ("Consent to call a given number must come from its current subscriber.").  Thus, to state a claim and have standing to sue for a violation of the cellphone provision, Plaintiff must either plead that he was the user or subscriber of record for the cellular phone service at the time of the challenged calls.  But he does not.  Rather, he simply asserts without elaboration that he "receiv[ed] the text messages at issue" (Compl. ¶ 11), and does not say where the cell phone that received the texts came from or who pays for it.  That is not enough to plead the user/subscriber element of a TCPA claim.

## III.  THIS IS NOT A CLASS ACTION.

Finally, if the Court does not dismiss Plaintiff's claims outright, then it should exercise its discretion to strike the putative class allegations.  Untold tens of thousands of dollars or more and many months of this Court's valuable time do not need to be wasted on class discovery and certification briefing in order to reach the inevitable conclusion: this is not a class action.  The Court can—and should—make that determination now, as it is permitted to do under Rules 12(f) and 23(d)(1)(D) of the Federal Rules of Civil Procedure.  Courts are empowered to strike class allegations "when no class action can possibly be maintained on the face of the pleading." *Pepka v. Kohl's Dep't Stores, Inc.,* 2016 WL 8919460, at *1 (C.D. Cal. Dec. 21, 2016) (granting motion to strike TCPA class allegations because individualized issues of consent made class certification impossible); *Tietsworth*, 720 F. Supp. 2d at 1146 ("Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained.").

Here, Plaintiff's putative class consists of literally *everyone* who received a text message from Musical.ly in the last four years.  Compl. ¶ 19 (action is brought on behalf of "[a]ll persons within the United States who (a) received a text message on his or her cellular telephone; (b) made by or on behalf of Defendant; (c) at any time in the period that begins four years before the filing of the complaint in this action to the date that class notice is disseminated").  Such a class cannot possibly be sustained.  Common sense dictates that most (if not all) of the putative class members receiving verification code texts would have no TCPA claim because they *generated and consented to* such texts by entering their phone number for the express purpose of receiving a verification code in order to sign up for and use the TikTok app.  *Cf. Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (granting motion to strike class of "all persons within the United States who own a 20–inch Aluminum iMac" because it necessarily included individuals who did not see or were not deceived by any advertisements).  An even more fundamental problem with the proposed class is that highly individualized inquiries as to whether each putative class member entered their phone number and *consented* to receive a verification code text message will need to be determined person-by-person, and thereby predominate over any

supposed common questions.  Under these circumstances, striking the improper class allegations is warranted.  *See Pepka*, 2016 WL 8919460, at *4 (striking class allegations in TCPA case that "involve[d] highly individualized inquiries regarding consent"); *see also Tietsworth*, 720 F. Supp. 2d at 1146 (striking class allegations in putative class action involving defective washing machines where individualized issues such as notice and reliance would prevent class-wide treatment).

Too often, plaintiffs invoke Rule 23 for its *in terrorem* effect, with little or no regard for the issues that will determine whether the litigation may proceed on a class-wide basis.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (acknowledging the "risk of 'in terrorem' settlements that class actions entail").  If it survives this motion to dismiss (and it should not), Plaintiff is certainly free to litigate his own claim, but out of fairness to Musical.ly and for the conservation of judicial resources he should not be permitted to exponentially expand the scope and cost of litigation with no reasonable prospect of certifying any class.

## CONCLUSION

For the foregoing reasons, Musical.ly respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice, for failure to state a claim under Rule 12(b)(6) or, at a minimum, strike the class allegations pursuant to Rules 12(f) and/or 23(d)(1)(D).

Respectfully submitted,

Dated:   February 27, 2019         By:   */s/   Laura A. Stoll*
                                        BROOKS R. BROWN
                                        *bbrown@goodwinlaw.com*
                                        LAURA A. STOLL
                                        *lstoll@goodwinlaw.com*
                                        **GOODWIN PROCTER LLP**

                                        Attorneys for Defendant
                                        MUSICAL.LY, INC

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **February 27, 2019**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **February 27, 2019**.

*/s/ Laura A. Stoll*
BROOKS R. BROWN
LAURA A. STOLL