1   BROOKS R. BROWN (SBN 250724)
    *bbrown@goodwinlaw.com*
2   **GOODWIN PROCTER LLP**
    901 New York Avenue NW
3   Washington, DC  20001
    Tel.: +1 202 346 4000
4   Fax.: +1 202 346 4444

5   LAURA A. STOLL (SBN 255023)
    *lstoll@goodwinlaw.com*
6   **GOODWIN PROCTER LLP**
    601 S. Figueroa Street, 41st Floor
7   Los Angeles, CA  90017
    Tel.: +1 213 426 2500
8   Fax.: +1 213 623 1673

9   Attorneys for Defendant:
    MUSICAL.LY, INC.
10

11              **UNITED STATES DISTRICT COURT**

12              **EASTERN DISTRICT OF CALIFORNIA**

13                  **SACRAMENTO DIVISION**

14  PATRICK ROBERTS, on behalf of himself      Case No. 2:19-cv-00098-KJM-CKD
    and all others similarly situated,
15                                             **REPLY IN SUPPORT OF DEFENDANT**
                Plaintiff,                     **MUSICAL.LY, INC.'S MOTION TO**
16                                             **DISMISS THE COMPLAINT AND STRIKE**
         v.                                    **THE CLASS-RELATED ALLEGATIONS**
17
    MUSICAL.LY, INC.                           Date:      May 31, 2019
18                                             Time:      10:00 a.m.
                Defendant.                     Courtroom: 3 (15th Floor)
19                                             Judge:     Hon. Kimberly J. Mueller
20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE TCPA. ............ 1

     A.    Plaintiff Does Not Plausibly Allege Use of an ATDS. ................................ 1

     B.    Plaintiff Does Not Plausibly Allege That Musical.ly is the "Maker" of the Challenged Text Messages. ..................................................... 5

     C.    Plaintiff Does Not Plausibly Allege That He is the User/Subscriber of the Unidentified Cell Phone Number. .......................................... 7

II.    THE CLASS-RELATED ALLEGATIONS SHOULD BE STRICKEN ................ 7

CONCLUSION ............................................................................................... 9

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Aderhold v. car2go N.A. LLC*,
   668 F. App'x 795 (9th Cir. 2016) ................................................................... 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 2, 6

*Cour v. Life360, Inc.*,
   2016 WL 4039279 (N.D. Cal. July 28, 2016) ................................................. 7

*Harnish v. Frankly Co.*
   2015 WL 1064442 (N.D. Cal. Mar. 11, 2015) ................................................ 4

*Hensarling v. Wells Fargo Bank, N.A.*,
   2016 WL 775950 (E.D. Cal. Feb. 29, 2016) .......................................... 1, 2, 5

*Kazemi v. Payless Shoesource Inc.*,
   2010 WL 963225 (N.D. Cal. Mar. 16, 2010) .................................................. 3

*Kramer v. Autobytel, Inc.*,
   759 F. Supp. 2d 1165 (N.D. Cal. 2010) .......................................................... 3

*In re LTL Shipping Servs. Antitrust Litig.*,
   2009 WL 323219 (N.D. Ga. Jan. 28, 2009) .................................................... 6

*Maestas v. Wal-Mart Stores, Inc.*,
   2018 WL 1518762 (E.D. Cal. Mar. 28, 2018) ................................................ 8

*Marks v. Crunch San Diego, LLC*,
   904 F.3d 1041 (9th Cir. 2018) ................................................................ *passim*

*McKenna v. WhisperText*,
   2015 WL 5264750 (N.D. Cal. Sept. 9, 2015) ............................................. 4, 7

*Morrelli v. Corizon Health, Inc.*,
   2018 WL 6201950 (E.D. Cal. Nov. 28, 2018) ................................................ 6

*Pepka v. Kohl's Dep't Stores, Inc.*,
   2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ................................................ 8

*Rallo v. Palmer Admin. Servs., Inc.*,
 2019 WL 1468411 (D. Colo. Apr. 3, 2019) ........................................................ 2

*Reichman v. Poshmark, Inc.*,
 267 F. Supp. 3d 1278 (S.D. Cal. 2017) .................................................... 3, 5, 6

*Reichman v. Poshmark, Inc.*,
 2017 WL 2104273 (S.D. Cal. May 15, 2017) ............................................... 5, 6

*Serban v. Cargurus, Inc.*,
 2016 WL 4709077 (N.D. Ill. Sept. 8, 2016) ....................................................... 3

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
 802 F. Supp. 2d 1125 (C.D. Cal. 2011) ............................................................ 2

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 9

Fed. R. Civ. P. 12(f) ........................................................................................... 8, 9

Fed. R. Civ. P. 15(a)(1) .......................................................................................... 7

Fed. R. Civ. P. 23(d)(1)(D) ................................................................................. 8, 9

### REPLY MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff's Opposition advances no legitimate grounds to allow this misdirected lawsuit to proceed beyond the pleadings stage. The Opposition confirms that this is not a case about text message spam sent to random numbers. It further confirms that this is not a case about texts sent to a curated "stored list" of phone numbers. *See* Mot. at 6-7 (discussing *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018)). Rather, as the few allegations in the Complaint confirm, this is a case about user-generated *verification codes* for Musical.ly's TikTok mobile phone application ("app"), the *sole purpose* of which is to allow users to complete the registration process in order to use the app. These alleged factual circumstances do not (and cannot) state a cognizable TCPA claim.

### I.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE TCPA.

In its opening brief, Musical.ly showed that the Complaint fails to state a TCPA claim because the facts alleged do not support plausible inferences that (A) the challenged texts were sent using an "automatic telephone dialing system" ("ATDS"); (B) Musical.ly was the "maker" of the challenged texts; or (C) Plaintiff was the authorized user or subscriber of the number that purportedly received the challenged texts. Plaintiff's Opposition only reinforces these fatal pleading deficiencies, and otherwise makes no attempt to argue that they can be cured. Dismissal with prejudice is thus not only appropriate but required.

#### A.   PLAINTIFF DOES NOT PLAUSIBLY ALLEGE USE OF AN ATDS.

Plaintiff must plead factual allegations that Musical.ly used an ATDS to send the challenged texts to state his TCPA cellphone provision claim. But Plaintiff fails to allege this requisite element in his Complaint. *See Hensarling v. Wells Fargo Bank, N.A.*, 2016 WL 775950, at *4 (E.D. Cal. Feb. 29, 2016) (granting motion to dismiss where complaint lacked plausible factual allegations of an ATDS). Indeed, the Complaint contains no factual allegations (plausible or otherwise) that an ATDS was used to send anyone the challenged texts. Mot. at 6. This pleadings defect on an essential element of Plaintiff's TCPA claim is fatal to this lawsuit.

Faced with this reality, Plaintiff contends that he "need not allege specific facts to support an allegation that Defendant used an ATDS." Opp. at 3. He is wrong. Plaintiff cannot rely

1    simply on formulistic recitations, labels, or conclusions to state a claim.  *Bell Atl. Corp. v.*

2    *Twombly*, 550 U.S. 544, 555 (2007).  Rather, as this Court correctly explained in *Hensarling*, a

3    TCPA claim fails if the plaintiff "does not allege facts that allow [the] court to draw a reasonable

4    inference regarding defendant's use of an ATDS."  *Hensarling*, 2016 WL 775950, at *4.  There is

5    no exception to the plausibility pleading standard with respect to the ATDS element (or any other

6    elements) of a TCPA claim.  *See*, *e.g.*, *Rallo v. Palmer Admin. Servs., Inc.*, 2019 WL 1468411, at

7    *3 (D. Colo. Apr. 3, 2019) (granting motion to dismiss where ATDS element was inadequately

8    alleged and explaining that the *Twombly-Iqbal* plausibility standard "does not put a TCPA plaintiff

9    in an insurmountable position to allege a TCPA claim").

10          Nor can the ATDS element be reasonably inferred from the few facts alleged here, as

11   Plaintiff contends.  Opp. at 3-4.  The Ninth Circuit has held that a device may qualify as an ATDS

12   in one of two ways—either because it has the capacity to automatically dial numbers (i) using "a

13   random or sequential number generator" or (ii) from a "stored list."  *Marks*, 904 F.3d at 1053; *see*

14   *also* Mot. at 5.[1]  Plaintiff does not dispute that the first of these two options—use of a random or

15   sequential number generator—is not alleged and not implicated here.  *See Stichting Pensioenfonds*

16   *ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[F]ailure to

17   respond in an opposition brief to an argument put forward in an opening brief constitutes waiver

18   or abandonment in regard to the uncontested issue.") (citation omitted).[2]  Thus, Plaintiff must

19   plead plausible factual allegations supporting a reasonable inference that the challenged text

20   messages were sent from a device with the capacity to automatically dial numbers from a "stored

21   list."  *Marks*, 904 F.3d at 1047.  He has not, and his opposition arguments to the contrary compel

22   no different conclusion.

23          For example, Plaintiff argues (at 3-4) that the challenged text messages must have been

24   sent from a "stored list" of numbers because they were "impersonal" (which is wrong as they

---

[1] From Musical.ly's perspective, the "stored list" component of the *Marks* decision is not in accord with the TCPA's statutory definition of an ATDS and was wrongly decided.  Musical.ly reserves all right to address the issue further as necessary and appropriate.

[2] Regardless, it would be unreasonable to infer from the Complaint that Musical.ly sends verification codes without any context or explanation to randomly or sequentially generated cell phone numbers for no purpose.

REPLY ISO MOTION TO DISMISS AND STRIKE                    Case No. 2:19-CV-00098-KJM-CKD

contained a *unique* verification code, *see* Mot. at 6 n.4) and were sent from the short code telephone number 59109.  But even taken as true, these allegations have no bearing on whether the challenged texts were sent to numbers on a "stored list."  *See Marks*, 904 F.3d at 1047.  Personal and impersonal texts can be sent to a number regardless of whether the number texted is on a "stored list."  And a short code is a unique number—like a telephone number—used to send and receive texts; the use of a short code is not somehow unique to texts to numbers on a "stored list."

For similar reasons, the purported consumer complaints—which are unsourced and do not even reference Musical.ly—do not support any plausible inference that the challenged texts were sent to numbers on a "stored list."  Indeed, is not reasonable to infer from the facts alleged that Musical.ly possesses a "stored list" of phone numbers and sends them unwanted verification codes for no purpose without any context or explanation.  Rather, as explained in Musical.ly's opening brief, the only reasonable and plausible inference to be drawn from the Complaint is that verification code texts are sent to numbers provided directly by the user or consumer when signing up for the TikTok app, because that is the nature and purpose of verification codes.  *See* Mot. at 6.

The cases cited by Plaintiff which found the ATDS element adequately alleged also do not advance Plaintiff's position, because each of them involved advertisements rather than verification codes.  *Serban v. Cargurus, Inc.*, 2016 WL 4709077, at *1, *3 (N.D. Ill. Sept. 8, 2016) (challenged text message was an advertisement for a 2006 Jaguar); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1167-68 (N.D. Cal. 2010) (challenged text messages were advertisements for cash advances and auto financing that were sent to "thousands of consumers nationwide"); *Kazemi v. Payless Shoesource Inc.*, 2010 WL 963225, at *1 (N.D. Cal. Mar. 16, 2010) (the challenged text messages were advertisements for "Payless shoe promotions"); *Reichman v. Poshmark, Inc.*, 267 F. Supp. 3d 1278, 1281, 1286 (S.D. Cal. 2017) (challenged text messages allegedly involved advertisements to view and buy clothing from Poshmark users' online closets).[3]  This distinction matters here because these two different types of communications do not permit the same kinds of inferences.  Unlike general advertisement texts, which potentially and hypothetically could be sent

---

[3] Plaintiff's reliance on *Reichman* is also misplaced because, as discussed below, the Court allowed and granted an early motion for summary judgment.  *See infra* n.5.

1  to randomly or sequentially generated numbers or numbers on a "stored list" for some marketing

2  purpose, the only logical purpose to send a specific *verification code* text is to permit whoever

3  initiated the text to complete the verification process.  *See, e.g.*, *Aderhold v. car2go N.A. LLC*, 668

4  F. App'x 795, 796 (9th Cir. 2016) (explaining that the "validation code" text message plaintiff

5  received "was directed . . . to completing the registration process" and was not a "'telemarketing'

6  message").  There is no logical purpose to send verification codes to random or sequentially

7  generated numbers or numbers on some "stored list."  Thus, the apparent inference Plaintiff relies

8  upon from the advertising text cases in an attempt to save his claims is not applicable here.  Put

9  simply, it would make no sense for Musical.ly to mass-distribute to numbers on a "stored list" a

10  verification code text message like the one allegedly received by Plaintiff: "[TikTok] 3756 is your

11  verification code."  Plaintiff's own response—"Code for what?"—proves the point.  Compl. ¶ 12.[4]

12      Plaintiff's reliance on *Marks* is likewise misplaced.  Plaintiff quotes *Marks* (at 4-5) for the

13  idea that a device may dial numbers "automatically" for TCPA purposes even if the numbers are

14  added to that device by a human being before they are machine-dialed.  Right or wrong, this is

15  beside the point.  Some level of "automation" in the sending of a text is not synonymous with the

16  definition of an ATDS under the TCPA.  *See, e.g.*, *McKenna v. WhisperText*, 2015 WL 5264750,

17  at *5 (N.D. Cal. Sept. 9, 2015) ("[E]ven though WhisperText uses automated processes to harvest

18  and upload a user's selected phone numbers and then send invitational messages, that

19  is insufficient to make WhisperText the maker or initiator of a call using an ATDS under the

20  TCPA.").  Musical.ly's argument—which Plaintiff does not respond to—is that the Complaint

21  does not allege facts to support a reasonable inference that the challenged verification code texts

22  were sent from a device with the capacity to automatically dial numbers *from a stored list*.

23  Plaintiff then argues (at 5) that *Marks* left open the question of "whether the device needs to have

24

---

25  [4] Plaintiff's citation to *Harnish v. Frankly Co.* is misplaced.  *See* Opp. at 4 n.2 (citing 2015 WL
26  1064442, at *3 (N.D. Cal. Mar. 11, 2015)).  In *Harnish*, the Court found the ATDS element was
    sufficiently alleged where "there [was] no indication that the message [was] specific to Plaintiff."
    2015 WL 1064442, at *3.  Here, on the other hand, there is every indication that the "verification
27  code" text message was specific to the intended recipient because *that is how verification codes
    work*—unique codes are provided to consumers who initiate them in order to complete the
28  verification process.

REPLY ISO MOTION TO DISMISS AND STRIKE          Case No. 2:19-CV-00098-KJM-CKD

1   the current capacity to perform the required functions or just the potential capacity to do so."  This

2   again misses the point.  The point is that Plaintiff has not alleged facts to support a reasonable

3   inference that the challenged verification code texts were sent from a device with the capacity

4   (whether current or potential) to automatically dial numbers *from a stored list*.  Again, it is not

5   reasonable to infer that verification code texts would be sent to numbers on a "stored list" for no

6   apparent purpose and Plaintiff provides no basis (legal or factual) for this Court to conclude

7   otherwise.

8       Finally, Plaintiff suggests (Opp. at 5) that his ATDS pleading failure is simply "the

9   omission of the word 'stored,'" but it is far more serious than that.  Addition of the word "stored"

10  would merely parrot the relevant *Marks* language, which is insufficient to render a claim plausible

11  as a matter of law.  *See*, *e.g.*, *Hensarling*, 2016 WL 775950, at *3 (conclusory statements are

12  insufficient to satisfy ATDS element).  In fact, as Musical.ly explained in its opening brief, the

13  discussion in *Marks* regarding a "stored list" demonstrates that Plaintiff could not cure the

14  pleading defect even if given the opportunity.  *See* Mot. at 6-7.

15      **B.   PLAINTIFF DOES NOT PLAUSIBLY ALLEGE THAT MUSICAL.LY IS THE "MAKER"**
16      **OF THE CHALLENGED TEXT MESSAGES.**

17      In its opening brief, Musical.ly showed that it cannot be reasonably inferred from the facts

18  alleged that Musical.ly is the "maker" of verification code text messages.  Rather, experience and

19  common sense confirm that verification code text messages are unique messages sent in response

20  to user prompts, for the purpose of completing a registration process.  Plaintiff offers nothing to

21  the contrary in opposition.

22      First, Plaintiff relies heavily on *Reichman* (at 5-6), but that reliance is misplaced.

23  Although Plaintiff is correct that *Reichman* was allowed to proceed past the pleadings, it did not

24  get much further.  *See Reichman v. Poshmark, Inc.*, 2017 WL 2104273, at *2-3 (S.D. Cal. May 15,

25  2017) (finding that defendant was not the "maker" of the challenged text where the text message

26  was sent in response to app user prompts).[5]  Regardless, even the motion to dismiss decision in

---

27  [5] *Reichman* demonstrates that if this case proceeds beyond the pleading stage (and it should not),
28  then discovery should be phased to focus first on the threshold "maker" issue. After denying the
    motion to dismiss, the Court permitted the defendant in *Reichman* to file an early motion for

REPLY ISO MOTION TO DISMISS AND STRIKE                    Case No. 2:19-CV-00098-KJM-CKD

1   *Reichman* does not help Plaintiff because, as noted above, the challenged text messages in that

2   case involved alleged advertisements to view and buy clothing, not verification codes as alleged

3   here. *Reichman*, 267 F. Supp. 3d at 1281, 1286. As explained above, an inference that Musical.ly

4   was the "maker" of the challenged verification texts here is neither plausible nor reasonable

5   because "experience and common sense" teach that verification codes are generated and sent *at*

6   *the request of consumers* in order to activate various accounts and apps. *See Ashcroft v. Iqbal*, 556

7   U.S. 662, 679 (2009) (instructing "the reviewing court to draw on its judicial experience and

8   common sense" when determining whether the plausibility standard has been met). This is not, as

9   Plaintiff argues (at 6), "an alternative explanation [of] the facts," but a conclusion guided by

10  experience and common sense about what inferences are reasonable (and what inferences are

11  plausible) under the circumstances.

12        <u>Second</u>, Plaintiff's new "system glitch" theory—advanced for the first time in the

13  Opposition (at 6)—does not save his claim because that theory is neither alleged nor plausibly

14  supported by any facts alleged in the Complaint. *See, e.g.*, *Morrelli v. Corizon Health, Inc.*, 2018

15  WL 6201950, at *3 (E.D. Cal. Nov. 28, 2018) (collecting cases for rule that "facts articulated in

16  Plaintiffs' opposition brief cannot cure the deficiencies of the complaint"). Plaintiff speculates

17  that perhaps it is possible that he received the verification code text messages due to a system

18  glitch. But rank speculation is insufficient to state a claim. Here, the Complaint lacks a single

19  allegation to sufficiently move Plaintiff's newfound speculative theory over "the line [from]

20  possibility [to] plausibility." *Iqbal*, 556 U.S. at 678 (citation omitted); *see also, e.g.*, *In re LTL*

21  *Shipping Servs. Antitrust Litig.*, 2009 WL 323219, at *12 (N.D. Ga. Jan. 28, 2009) ("imagination

22  is not enough . . . the Court is required under *Twombly* to evaluate whether the *facts* alleged

23  support an inference that . . . is plausible").

24        <u>Finally</u>, Plaintiff's argument (at 7) that Musical.ly "controls the content" of the verification

25  code text message also does not make Musical.ly the "maker" of the text. The cases cited in

26  _____

27  summary judgment just a month after the initial scheduling conference, which it later granted.
    *Reichman*, 2017 WL 2104273, at *5; Scheduling Order Regarding Discovery and Other Pre-Trial

28  Proceedings, *Reichman v. Poshmark, Inc.,* No. 16-cv-02359-DMS-JLB (S.D. Cal. Mar. 2, 2017),
    ECF No. 21.

1  Musical.ly's opening brief (at 8-9) show that a defendant who controls some of the *wording* of a

2  text message is still not the "maker" of that text if it was sent as a result of affirmative acts by a

3  third party. *See*, *e.g.*, *McKenna*, 2015 WL 5264750, at \*1, \*4-5 (granting motion to dismiss

4  because defendant did not initiate and therefore was not the "maker" of a text despite having

5  drafted it); *Cour v. Life360, Inc.*, 2016 WL 4039279, at \*1, \*3-4 (N.D. Cal. July 28, 2016) (same).

6  The only distinguishing factor Plaintiff offers (at 7) is that, unlike *Cour* and *McKenna*, he has not

7  yet had the opportunity to amend,[6] but amendment will not change the fact that the challenged

8  texts are verification code messages which by their very nature are initiated by third-party

9  consumers in order to complete the verification process.

10  
11        **C.**     **PLAINTIFF DOES NOT PLAUSIBLY ALLEGE THAT HE IS THE USER/SUBSCRIBER OF THE UNIDENTIFIED CELL PHONE NUMBER.**

12        Plaintiff argues (at 7-8) that he need not "specifically allege" the user or subscriber element

13  of a TCPA claim, but this is incorrect (*see* Mot. at 10) and his silence on the topic effectively

14  concedes that he is unable to make the required allegation. Notably, Plaintiff does not even state

15  in his Opposition (much less plead facts in the Complaint) that is he the user or subscriber of the

16  number which purportedly received the challenged texts. Furthermore, the cases Plaintiff cites (at

17  8) are inapposite because they included specific allegations that the phone belonged to the

18  plaintiff, whereas here there is (tellingly) no such allegation.

19  **II.**     **THE CLASS-RELATED ALLEGATIONS SHOULD BE STRICKEN.**

20        In its opening brief (at 11-12), Musical.ly showed that Plaintiff had no reasonable prospect

21  of certifying a class, and so the Court should exercise its discretion to strike or eliminate the class-

22  related allegations. Plaintiff, apparently recognizing that the merits favor Musical.ly, does not

23  oppose the motion to strike on the merits, but rests only on the idea that it is "premature." Opp. at

24  8. However, the motion is not at all premature under these circumstances.

25  
26  

27  [6] This is actually not true. Plaintiff could have amended as a matter of course after evaluating this argument following the pre-filing meet and confer, but instead stated that his allegations were

28  sufficient and he intended to stand on them and not amend. *See* FED. R. CIV. P. 15(a)(1).

First, Plaintiff cites authority (at 8-9) for the argument that motions to strike class allegations are *typically* denied as premature.  This is the atypical case, however, and Plaintiff does not deny that courts are empowered to strike, *see* FED. R. CIV. P. 12(f), or "eliminate," *see* FED. R. CIV. P. 23(d)(1)(D), class allegations "when no class action can possibly be maintained on the face of the pleading."  Mot. at 11 (quoting *Pepka v. Kohl's Dep't Stores, Inc.,* 2016 WL 8919460, at *1 (C.D. Cal. Dec. 21, 2016)).  That is exactly the situation here.  Musical.ly showed in its opening brief (at 11-12) how individualized issues of consent are certain to foreclose certification of Plaintiff's impossibly overbroad class consisting of literally everyone who received a verification code text message from Musical.ly in the last four years.  Plaintiff concedes that consent will be a serious issue by proposing (at 8) to "identify and exclude" consenting individuals from the class, but he offers no explanation as to how he might accomplish this without resorting to highly individualized inquiries and evidence.  That is because it cannot be done.

Second, Plaintiff cites (at 8) this Court's decision in *Maestas v. Wal-Mart Stores, Inc.*, but there the Court highlighted that, through amendments, plaintiff had significantly reduced the scope of the class from what was "initially proposed."  2018 WL 1518762, at *5 (E.D. Cal. Mar. 28, 2018).  Here, to the contrary, Plaintiff doubles down on his uncertifiable class definition.

Finally, the nature of the challenged texts demonstrates why the motion to strike should be granted.  The challenged text messages are verification codes, which experience and common sense teach are initiated by consumers who *request* them in order to complete the verification process.  *Unrequested* verification codes will occur only when a third-party consumer enters a wrong number by mistake, or in some other rare or unforeseen circumstance.  Even assuming for the sake of argument that there are some small number of consumers who received *un*requested verification codes from Musical.ly, the only way to identify such consumers would be through highly individualized evidence, foreclosing the possibility of class treatment.  Thus, this is the atypical case where—out of fairness to Musical.ly and to conserve judicial resources—striking the class allegations is an appropriate exercise of the Court's discretion.

**<u>CONCLUSION</u>**

For the foregoing reasons, and for the reasons set forth in its opening brief, Musical.ly respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice, for failure to state a claim under Rule 12(b)(6) or, at a minimum, strike the class allegations pursuant to Rules 12(f) and/or 23(d)(1)(D).


Respectfully submitted,

Dated:   May 15, 2019          By:   */s/ Laura A. Stoll*
                                      BROOKS R. BROWN
                                      *bbrown@goodwinlaw.com*
                                      LAURA A. STOLL
                                      *lstoll@goodwinlaw.com*
                                      **GOODWIN PROCTER** LLP

                                      Attorneys for Defendant
                                      MUSICAL.LY, INC

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Eastern District of California by using the CM/ECF system on **May 15, 2019**.  I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct.  Executed on **May 15, 2019**.

*/s/ Laura A. Stoll*
BROOKS R. BROWN
LAURA A. STOLL

REPLY ISO MOTION TO DISMISS AND STRIKE                    Case No. 2:19-CV-00098-KJM-CKD